And at this time we'll hear Ali v. Lynch. Good morning, everyone. I'm going to start with the facts that are not in dispute. That Mr. Ali's father was murdered, his sister was raped and murdered, his house was burned down and his two brothers were killed in that fire. In addition, there is uncontroverted testimony of a doctor who stated that Mr. Ali suffers clearly, quote, clearly has some type of brain injury and symptoms which were consistent with traumatic brain injury. All of those facts are not in dispute. Yet despite these findings, the immigration judge found that Mr. Ali failed to meet his tortured on account of a political opinion or a particular social group. These findings are without merit. The first is the error of the board in affirming the immigration judge's exclusion of evidence. The immigration judge excluded key evidence from Dr. Doerly who concluded that, in fact – I'm sorry, but you said all of these things were testified to by your client. Correct. And there was no adverse credibility finding in the sense that there was no finding that your client was lying. Correct. But there is a finding that your client's limitations, which may very well result from the abuse, meant that he was – though he was not deliberately incredible, that he couldn't carry his – he couldn't sustain his burden because what he said couldn't be credited. Yes, Your Honor. Well, the IJ, in fact, did state that I find the following facts to be established, and those were the facts that I recited at the beginning. However, the immigration judge then concluded that Mr. Ali, because of his limitations, was unable to establish specifically that he was tortured or that the torture occurred on account of a political opinion or particular social group. And those are the – and that's what – why Dr. Doerly's report and his mom's letter are so key. Because Dr. Doerly, in fact, conducted a physical examination of Mr. Ali and concluded that he had scars consistent with torture – whips on his back, bruises on his legs, you know, other scars on his head, things like that. His mother's report – his mother's letter, in fact, indicates that the house was burned down by the enemy, quote, the enemy. Mr. Ali testified repeatedly that the enemy was the Cobras, which were the militia of the still-ruling president of the Republic of Congo. So excluding Dr. Doerly's report is key because Dr. Doerly corroborates the torture. The judge specifically expressly found, quote, no evidence of torture. But Dr. Doerly's report contradicts that. The immigration judge excluded Dr. Doerly's report entirely because Dr. Doerly was unavailable for cross-examination. The board, to the contrary, doesn't sustain or affirm that finding, but instead incorrectly finds that Dr. Doerly's report was excluded because it was late, and that is not accurate. Dr. Doerly's report was submitted in 2008, December 2008. That's two years prior to a final determination by the immigration judge. But the immigration judge literally does not even mention Dr. Doerly's report because he excluded it for inability to cross-examine. And this is quite ironic because the board, in its decision here, actually provides a basis to include Dr. Doerly's report. The board allows DHS to submit evidence despite the inability of Mr. Ali to cross-examine DHS's witness, and the board notes that inability to cross-examine does not provide a basis to exclude a document. It says, the board says it's a basis for weight. Oh, you're telling us you think that the IJ, without making an explicit credibility determination, found Mr. Ali credible because they didn't find that he was lying. Well, the IJ found several facts that he believed. I guess that would constitute a credible finding, at least with respect to those facts. And that would have led to what? That would have led to, in conjunction with the other evidence that was presented, Dr. Doerly's report, the letter from his mother. That would have led to a finding that, in fact, the torture did occur because the IJ said there was no evidence of torture, and that's contradicted by both Dr. Doerly's report and the later report, Dr. Opson's report, the neurological exam, which actually confirms traumatic brain injury. And the mother's letter, which would have confirmed the on-account of part of the requirement, which is that the torture and the harm inflicted on Mr. Ali and his family was on account of a protected particular social group, as well as political opinion. So the IJ went on to look at corroborating evidence without the explicit finding of credibility, correct? Correct. If we remand, what would the IJ do then? Well, Your Honor, the point is that the IJ, in fact, did not even mention some of the corroborating evidence, some of the key. Literally, Dr. Doerly's report, the word Dr. Doerly doesn't appear once in his decision because he excluded it in its entirety from the record. So if you've got the credibility finding that you seek and remanded to the IJ, then he or she would be required to do a more thorough examination of the evidence that was available. Yes, and to factor in the additional evidence that was presented. And what is important is that the judge for excluding the mother's letter says, well, you presented it late. But I would call the court's attention to Mr. Ali's testimony in May of 2009, well before the end of the decision. He's asked specifically in page 364 to 366 about why he didn't get a letter from his mother. And he said, I did get a letter from my mom. I lost it. I don't remember what happened to it. I'm not really sure what I did with it. The IJ is not required to accept that explanation. No, the IJ is not required to accept that explanation. But what the IJ is required is to accept the explanation. And the explanation that was later provided in 2010 was that this is a symptom of his diagnosed dementia. Dr. Durley specifically diagnoses Mr. Ali with dementia. And this behavior of forgetting things, forgetting to contact his attorney, forgetting to get evidence, losing evidence. I think it's sort of a catch-22 here. Because the more you argue that he suffers from dementia and mental impairments, the easier it becomes to support the IJ's finding that there's insufficient credible evidence to support, found in his testimony. I mean, he's not, the finding basically is that he's not a liar, but he's not reliable because of his mental impairment. And that's why the additional corroborating evidence is so important. That's why it is so important. One aspect of it was that the IJ found was, quote, unreliable. It was who attacked him and why. That's essentially what happened. The IJ does accept that he was attacked, although the IJ says there's no evidence of torture. And again, that's why the medical evidence is so important. Also the letter from his mother is so important. And so yes, Your Honor, while there's clearly evidence, and if you read the transcript, it's very apparent that there's cognitive issues. That's why the corroborating evidence becomes so important. And the fact that the board affirmed the exclusion of evidence for reasons not provided by the IJ, and in fact then allows DHS evidence in for the contrary reasons, provides sufficient basis on that basis alone to remand the matter back to the agency for further finding and further analysis. Thank you. Thank you. Thank you, Mr. Drummond. I believe we'll hear you then. May it please the Court. David Wetmore for the Attorney General. To go directly to your point, Your Honor, what was found to be in doubt was really the sine qua non of his claims. As the immigration judge said, Respondent's testimony was so inconsistent and inconclusive that the Court cannot establish with any reasonable certainty what happened, who perpetrated such actions, or the motives behind such actions. And that's what Mr. Ali has the burden of showing. That's the essence of the case. Was any corroboration offered on those points that was rejected by the IJ or that was ignored by the IJ? Any independent corroboration? No. That's what I'm asking. No. The only... What do you mean by independent? I'm saying... An extra witness to these events, someone who observed it that wasn't simply mine. That would be independent corroboration of the events, such as his mother who said, I was in the house, I wasn't in the house, these people burned the house. Her statement is incredibly lacking in that regard, and it was submitted late and for no good reason. Is there a civil war going on in that country? There was until 1999 when it stopped. In fact, that was a finding made by the agency that the civil war ended in 1999, and if we look at the 2010 Department of State background note, it says in March 2003, the government signed a peace accord with the Ninjas, the group that he may or may not have provided the terrorist group that Mr. Ali may or may not have provided material support for. That was another finding that couldn't be made based on the inconsistencies. There was a peace accord signed with the Ninjas, and the country has remained stable and calm since the signing. That's at page 695. He fled from the Republic of Congo, and he didn't come directly to the United States. He went to the other country called the Republic of Congo? To the DRC, yeah, the Democratic Republic of the Congo. Oh, I see. All right. Briefly, and then got a false passport, and then was essentially smuggled into the country by some sort of smuggler, and again, the testimony was incredibly inconsistent on it. When we look at the heart of the claim here, it's just, it's rife with inconsistencies. We talked about- Based on his inability to give an accurate report, isn't that true? It's unclear, or possibly his veracity. We really don't know. We don't know. If the IJ found it not incredible, we have to assume that means credible. Well, if we assume it means credible, it's if he says the sky is blue and he says the sky is red at the same time, which do we hold as credible? I mean, if we look at the key events here, Your Honor, the sister's death, he initially says in his written statement that his sister's body was found in the woods. Then in the document that was not admitted into evidence, it was just admitted, the Dr. Dorely report, it actually says that he told Dr. Dorely that the body was discovered in the woods by neighbors and they saw the body with bruises and blood all over it. Then on direct examination, he says that the cobras came to his house, kidnapped his sister and killed her, but we haven't seen the body. Then on cross-examination, he says, I have a problem remembering things and I forget things quickly. When his own mental health professional that did, in fact, testify was asked on cross-examination, what if she learned that Ali testified inconsistently regarding major factual events, such as when his father was alive or dead, or when his house was burned? She said, and I quote, I would definitely be concerned about malingering. That's at page 421 through 22. But the IJ found he was not deliberately. Not deliberately. Not deliberately, but they're simply. Malingering. Based on this wood show intent, and that wasn't the IJ's finding, but that was his own mental health professional saying, based on my analysis of his condition, he may not remember a date here or there, or he may be confused regarding details. The IJ did not find malingering. The IJ did not find malingering. Let's focus on what the IJ did. Oh, absolutely. So what the IJ did is find on the identity of the attackers that were at issue, which goes directly to who allegedly persecuted him and why. He says on direct examination that the cobras, which was sort of the opposing group, burned down his house. Then he said, on cross, I quote, I don't know who did it, cobras, ninjas, but the house was burned. Were the cobras opposed to ninjas? Yes. Those were the two opposing groups. He allegedly, they were both terrorist groups that engaged in all sorts of horrific acts. When asked about what sort of acts his group that he belonged to, he conceded that they engaged in rape, murder. He said he didn't participate in it, but he stood as a security guard for their meetings. He provided them with food and water, did other errands for them. And when he was asked regarding his role in that group, he did in fact say that he was a member, he was a participant, and he was with them, he joined them. So then when we look further regarding who did any of this stuff to him allegedly, what happened? The father's death. In his written statement, he says the cobras kidnapped his father and he never saw him again. Then on direct, he says the cobras came to our house and killed his father because Ali wouldn't join him. Then on cross-examination, he says my father died when the house burned and later found his father's body. My father's body, he says, quote, it seemed that I didn't see it. I didn't see the body. It's just, it's neither here nor there. It's the exact type of case. He's discussing the most traumatic events of his life when he talks about the house burning and his father being killed. Would you concede that, that they were traumatic events? They were absolutely traumatic events, but it's his burden to show that these events were perpetrated against him or his family based on a protected ground. And he's completely all over the map with regard to that, which is the perfect type of case where this court, if we look back in a pre-real ID case like Diallo, which is 232, fed third at 285, it's a 2000 case from this court. When there is significant uncertainty regarding what these events were, it's the type of case where independent corroboration is needed. It's expected. And the only reason it shouldn't be given- Let me give you a hypothetical. I'm not sure it's this case, but I mean, if you have a country that's in turmoil because there are various homicidal groups that are fighting each other and somebody is, you can easily find that somebody's a victim of that struggle and that they both torture people, wouldn't the Convention Against Torture justify keeping that person here rather than sending them back into that environment? Well, we would have to look at what the standard would be there. He would have to demonstrate that he suffered past torture by or with the acquiescence of the government of that country. My hypothetical is that the government is not in control of what's going on. Yeah, we can see that it wasn't at the time, but again, there's no evidence to demonstrate it's more likely than not. At what time? At the time?  And then if he can't show that as well, we need to look at whether it's more likely than not that he will be tortured when he returns. Because my question is whether the absence of the failure to establish why he was abused or by whom might be repairable if you looked at it under the Convention Against Torture. We would submit it's not because the convention is forward-looking. It's a form of withholding, withholding of removal. And the country is now peaceful. And the country is peaceful. I mean, the record and the evidence, it's now 13 years old. Excuse me, the Diallo case that used sides requires the IJ to look at corroborating evidence only after a decision on credibility was made. So we have to assume that he found Mr. Ali credible before he went to look at the corroborating evidence. Or if we would submit that- Otherwise he wouldn't have been looking at it. Sure. It's, if it would reasonably be expected in a case like this where there is essentially a credibility determination cannot be made, the IJ does at some point say, I can't determine if this is credible or not because on one hand he's saying this happened this way and on the other hand he's saying it happened a completely and totally different way. These people were alive at this time and harmed by these people. These people were alive at this time and harmed by these others. And he, you know, as opposing counsel noted, he indicated during his hearing that he had a letter supposedly from his mother, but he apparently lost it. And then the immigration judge sets the deadline for additional evidence and it goes by, eight months go by. He's traveling, he conceded that he had traveled back and forth between New York and Ohio five times looking for employment but somehow couldn't contact his attorney, his attorney said no, he never contacted us. Calls him at the last minute, provides this letter, the letter doesn't really corroborate anything other than the basic facts. That the house was burned down. Why? Which are critical to asylum. That the enemy, who's the enemy? At one point he said the Cobras did it, at one point he said the ninjas did it. We don't know who the enemy is and it's his burden to show these things in order to establish his eligibility for relief. Absent that showing, he hasn't met his burden. And that's really why we would suggest the substantial evidence supports the finding that he failed to carry his burden. And why the immigration judge said the list of contradictions and omissions, large and small, is nearly endless in this case. We would submit that the petition for rebuke should be denied. I do have a question. Yes, your honor. Obviously, the traumatic nature of the brain injury causes an impairment that could account for all of these contradictions. Did the IJ take that into consideration? The IJ noted it, but at no point did Ali's counsel, and he was represented through this entire hearing, ever raise any question with regard to whether he was competent to testify or that his testimony shouldn't be believed. His own mental health professional said contradictions on major events, that could be an indication of malingering. Nobody has ever said that because of whatever happened to him, we simply don't know what happened to the man. Clearly bad things, but we don't know how and by whom. We have to take his testimony at face value, and it's completely contradictory, and it's completely full of holes. Thank you. Thank you, your honor. Questions? We'll hear a rebuttal. Thank you. I would like to start actually with this court's decision in Diallo, where this court laid out the standard for expecting corroboration. Which is that the immigration judge must first identify the fact or facts where it's reasonable to expect corroboration. And then if the corroboration isn't provided, consider the explanation for the failure to provide the corroboration. In this instance, the immigration judge did neither of those requirements. The first is that the immigration judge- The prerequisite for going to those requirements is the finding of credibility. Correct. We are assuming that the finding of lack of intent to lie equals credibility. Correct, your honor. Okay. The immigration judge never explained why it's reasonable to expect a man who has been diagnosed with dementia and remaining in his country, his only sole remaining relative is a mother who's living as a refugee in Mali. Why it is reasonable to expect additional corroboration than what was already provided. What was provided was a psychological evaluation. I'm not sure I understand why a lack of intent to lie amounts to credibility. I mean, the purpose of establishing credibility is to decide whether you can rely on something that is said. Credible meaning it is believable, literally. I mean, you can have someone whose mental impairment is a delusion and who believes things that the FBI is telling him through his teeth. And you could say this person is suffering from a disorder and is not a liar, but the person, you can't credit what the person's saying for the purpose of making a judicial finding. Well, your honor, I think that's why there's a subjective and an objective component to this. Go ahead. In the asylum applications. Subjectively, I think it's clear that the immigration judge believed Mr. Ali was subjectively telling the truth. He had certainly exhibited signs of confusion, memory loss, things that were diagnosed. Then we go to the question of objectively, whether he objectively established his case. Well, I mean, even the subjective. I mean, if he testifies to contradictory things, then what is it you believe? Well, your honor, that's precisely why the corroborating evidence, to the extent that that requires under Diallo or any other case or just by plain reason to go to the corroborating evidence. That's why the immigration judge's exclusion of the corroborating evidence is so important. Now, we can presume, as the government would like us to, or the board alleges that the immigration judge wouldn't have found the corroborating evidence to be sufficient. But we don't know that. And it's so important that the immigration judge didn't discuss several key pieces of evidence which might have been sufficient to the fact finder, to the individual who listened to Mr. Ali's testimony, to witness him come in multiple times. We don't know what he would have found had he properly considered that evidence. But instead, he excluded it from the record for reasons stated that were not then found by the board. The board created other reasons for his excluding it from the record, which actually weren't the case. And for all of those reasons, that's- I'm sorry, which reasons are there that are not the case? So the immigration judge said- You're confusing me. I do apologize. The immigration judge said, I am not going to consider Dr. Dooley's letter because she is not present for cross-examination. The board said that was proper because the immigration judge excluded it because it was untimely. And that's just simply not the case. Dr. Dooley's letter was submitted in May 2008, two years before the immigration judge's decision, a year and a half before his deadline for evidence. So because the board affirmed the exclusion of evidence on reasons not provided by the IJ, and in fact, reasons that weren't true, that by itself provides a basis for remand. And if I could just briefly, briefly mention the material support bar which the government alleges. One, that wasn't found by the agency, and two, I would just note that on page 194 of the record, in denying Mr. Ali's claim for failure to establish that he was an imputed political opinion. The immigration judge said, Mr. Ali provided basically no support to the ninjas and therefore there would be no reason for the Cobras to want to harm him. So the government can't have it both ways. If he provided no support to the ninjas for the purposes of establishing- If he provided material support, then there'd be some inference available.  Thank you, Your Honors. Thank you both. We'll reserve decision.